IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| TONYA DEE COLLINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:11-CV-299 |
| | § | |
| CAROLYN W. COLVIN, | § | |
| Acting Commissioner of Social Security, | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION**
**TO AFFIRM DECISION OF THE COMMISSIONER**

Plaintiff TONYA DEE COLLINS brings this cause of action pursuant to 42 U.S.C. § 405(g), seeking review of a final decision of defendant CAROLYN W. COLVIN, Acting Commissioner of Social Security (Commissioner), denying plaintiff's application for disability insurance and supplemental security income benefits. For the reasons set out herein, the undersigned United States Magistrate Judge recommends the Commissioner's decision finding plaintiff not disabled and not entitled to benefits be AFFIRMED.

I.
BACKGROUND

Plaintiff applied for disability insurance benefits and supplemental security income benefits on September 15, 2009. (Transcript [hereinafter Tr.] 95, 99). Plaintiff alleges she has been unable to work since May 8, 2009 due to pain in her lower back along with some mental health issues, which are not a part of this appeal. (*Id.* 13, 95). The Social Security Administration, finding plaintiff suffers from non-disabling lower back pain due to degenerative disc disease of the spine

and affective mood disorders, denied benefits initially and upon reconsideration. (*Id.* 43, 45).

Upon plaintiff's request, a hearing was held before an Administrative Law Judge (ALJ) on April 14, 2011. (*Id.* 25). The ALJ determined plaintiff had not engaged in substantial gainful activity since her alleged onset date. (*Id.* 13). At the time of the administrative hearing, plaintiff was forty-one years old and had completed her education through the eleventh grade. (*Id.* 15). Plaintiff's past employment included working as a fast-food cook and a fast-food worker. (*Id.* 18).

On May 25, 2011, the ALJ rendered an unfavorable decision, finding plaintiff was not disabled and not entitled to benefits at any time relevant to the decision. (*Id.* 28-29). The ALJ found plaintiff suffered from "the severe impairments of obesity, degenerative disc disease of the lumbar spine, anxiety disorder, bipolar disorder, panic disorder without agoraphobia, personality disorder, and poly-substance abuse, in sustained full remission." (*Id.* 13). The ALJ found that while these impairments were "severe" within the meaning of the regulations, they were not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, of 10 C.F.R. Part 404. (*Id.*).

After reviewing the medical record and discrediting plaintiff's claims in large part, the ALJ concluded plaintiff retained the residual functional capacity (RFC) to perform a full range of light work with some additional limitations. (*Id.* 14). Based on the RFC determination and the testimony of the vocational expert, the ALJ found that while plaintiff could not return to her past relevant work, there were jobs which plaintiff remains able to perform, specifically, folding machine feeder, mail room clerk, and shipping and receiving weigher. (*Id.* 19). Following plaintiff's unsuccessful appeal of the ALJ's determination, this suit seeking federal judicial review of the denial of benefits was filed pursuant to 42 U.S.C. § 405(g).

## II.
## ISSUES PRESENTED

Plaintiff presents one ground upon which she contends reversal of the Commissioner's prior determination is warranted, which is that the ALJ's decision plaintiff can perform light-level work is not supported by substantial evidence. Plaintiff's argument is two-fold: (i) the ALJ's determination plaintiff is limited to a "light" residual functional capacity with a "sit/stand" option is not consistent with medical evidence and (ii) even then, the jobs identified by the vocational expert are not consistent with that portion of the ALJ's RFC determination.

## III.
## STANDARD OF REVIEW

In reviewing disability determinations by the Commissioner, this Court's role is limited to determining whether substantial evidence exists in the record, considered as a whole, to support the Commissioner's factual findings and whether any errors of law were made. *Anderson v. Sullivan*, 887 F.2d 630, 633 (5th Cir. 1989). To determine whether substantial evidence of disability exists, four elements of proof must be weighed: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history." *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991) (citing *DePaepe v. Richardson*, 464 F.2d 92, 94 (5th Cir. 1972)). If the Commissioner's findings are supported by substantial evidence, they are conclusive, and the reviewing court may not substitute its own judgment for that of the Commissioner, even if the court determines the evidence preponderates toward a different finding. *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980). Conflicts in the evidence are to be resolved by the Commissioner, not the courts, *Laffoon v. Califano*, 558 F.2d 253, 254 (5th Cir. 1977), and only a "conspicuous absence of credible choices"

or "no contrary medical evidence" will produce a finding of no substantial evidence. *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983). Stated differently, the level of review is not *de novo*. The fact that the ALJ could have found plaintiff to be disabled is not the issue. The ALJ did not do this, and the case comes to federal court with the issue being limited to whether there was substantial evidence to support the ALJ's decision and whether any errors of law were made.

## IV.
## MERITS

Plaintiff first challenges the ALJ's determination that she is capable of performing light-level work. Plaintiff contends such determination is not supported by substantial medical evidence of record, to wit: the ALJ failed to recognize the severity of her chronic lower back pain in making his determination. The Commissioner has responded that, while record evidence indicates plaintiff has some degree of limitations due to her back problems, the ALJ properly accounted for those limitations in his RFC determination, and consequently there is substantial evidence in the record supporting the ALJ's determination.

The Commissioner found that, physically, plaintiff suffers from lower back pain due to degenerative disc disease of the lumbar spine, *inter alia*. Starting with the last of the four *Wren* factors, plaintiff's age, education, and work history do not, themselves, support a claim of disability. *See Wren,* 925 F.2d at 126, 128. At the time of the hearing, plaintiff was thirty-nine years old and had completed her education through the eleventh grade. Plaintiff indicated her entire work history from 2002 to 2009 was at a restaurant as a worker and a cook. (Tr. 130). None of these factors indicate plaintiff should be classified as disabled given her ailments. In-depth evaluation of the three remaining *Wren* factors yields the same result. *See id.*

*A. The Evidence*

1. Objective Medical Evidence

In April 2006, plaintiff was in a motor vehicle accident. (Tr. 204, 211). At the hospital, despite her complaints of severe back pain, plaintiff had a full range of motion. (*Id.* 211-12). A CT scan at that time revealed plaintiff had degenerative disc disease. (*Id.* 229). The record, however, does not contain any doctor's report recommending any course of treatment for the condition.

The next objective medical evidence in the record regarding plaintiff's back does not appear until May 2009, when plaintiff fell at work and her doctor ordered an X-Ray.[1] (*Id.* 259, 262). The X-Ray, like the 2006 CT scan, indicated plaintiff suffered from "[d]egenerative disk disease predominantly at L5-S1." (*Id.* 262). Plaintiff was given a prescription for Lortab and Valium and sent home with a cane. (*Id.* 259). It appears no further treatment was ordered.

In September 2009, a Dr. Robert Williams ordered another CT scan of plaintiff's back. (*Id.* 250). That CT scan showed "severe chronic degenerative disk changes . . . at the L5-S1 level . . . moderate to severe bilateral sacroilian joint osteoarthritis." (*Id.*). Dr. Williams also noted the CT scan "suggest[ed] [a] left paramediam disk herniation at L4-5, moderate in size." (*Id.*).

In December 2009, a Dr. Emmanuel Barias evaluated plaintiff. (*Id.* 373). Dr. Barias performed a variety of tests to determine plaintiff's range of motion in her back. The results indicated plaintiff had a full range of motion in every area tested. (*Id.* 375-76). Specifically, regarding her lumbar spine, plaintiff had a full range of motion in all directions and did not have any scoliosis. (*Id.* 378). Her heel to toe walking, however, was classified as "weak." (*Id*). The evaluation of plaintiff's cervical spine indicated plaintiff had a full range of motion in that area as

---

[1] This May 8, 2009, accident in which plaintiff slipped and fell at work is the event forming the basis of disability onset.

well. (*Id.*). No tenderness or muscle spasms were noted in any of the areas evaluated. (*Id.*).

### 2.  Diagnoses and Opinions of Treating and Examining Doctors

There are no diagnoses or opinions of the physicians who treated plaintiff at the time of her 2006 motor vehicle accident, as their focus was not on plaintiff's back but rather on her lacerated liver. (*See* Tr. 204-37). The next time plaintiff was seen for treatment of her back was after she fell at work in May 2009. As detailed above, plaintiff was, at that time, again diagnosed with degenerative disc disease based on the results of an X-Ray. (*Id.* 262). When plaintiff returned to the emergency room one month later complaining of back pain, she was again diagnosed with chronic lower back pain secondary to degenerative disc disease of the lumbar spine. (*Id.* 255). Plaintiff was prescribed pain killers and sent home. (*Id.*).

In late 2009, when Dr. Barias evaluated plaintiff, he concluded "[p]atient is a previously productive individual who stopped working due to back pain; [sic] This apparently impairs her being able to stand or sit for a long time. She is able to walk without assistance, does not present with gait problems, able to use upper extremities well." (*Id.* 374).

Approximately three months after Dr. Barias's evaluation, a Dr. Carmen Bird completed a Physical Residual Functional Capacity evaluation of plaintiff. In his evaluation, Dr. Bird acknowledged plaintiff had degenerative disease of the spine. (*Id.* 398). Dr. Bird found plaintiff was able to occasionally lift up to twenty pounds and frequently lift up to ten pounds. (*Id.* 399). He further determined plaintiff was able to stand and/or walk and sit for six hours out of an eight-hour workday. (*Id.*). The doctor limited plaintiff's postural limitations to "occasional." (*Id.* 400).

### 3. Plaintiff's Subjective Evidence of Pain and Disability

In 2006, after her motor vehicle accident, plaintiff was complaining of severe lower back pain. (Tr. 211). After that incident, however, the record does not contain any medical records of plaintiff seeking treatment for back pain until 2009, when she suffered a fall at work, although during that 2006 to 2009 time period, plaintiff did comment on her back pain to a counselor she was seeing for her depression. The counselor's notes from late 2008 indicate, "Tonya has been seen by her chiropractor who has apparently all but eliminated her back pain." (*Id.* 354). On other occasions, the counselor noted plaintiff's back was improving (*Id.* 352), and she was "working more" with "less pain in her back." (*Id.* 351).

After her 2009 fall, plaintiff consistently complained of back pain. Approximately one month after the fall, plaintiff reported to her psychiatrist that she had returned to work approximately two weeks after the fall but she was suffering from ongoing pain. (*Id.* 330). Plaintiff also returned to the emergency room three times in the months immediately following the accident complaining of back pain. (*Id.* 250, 253, 256).

In her initial disability report, plaintiff stated, "I cannot lift over 10 lbs[,] cannot bend repetavily [sic] [,] cannot stand or sit for long periods." (*Id.* 144). Plaintiff indicated she washes dishes and dusts around the house. (*Id.* 146). She said she goes grocery shopping every day, but later stated she only goes once every one to two weeks. (*Id.* 147). Plaintiff stated she could walk five minutes a day and could sit for thirty minutes. (*Id.* 149). She said she could walk half-way around a block before needing to stop and rest. (*Id.*). Plaintiff also stated she daily required a cane to walk, which was prescribed twelve years prior. (*Id.* 150).

In the disability report on appeal, plaintiff described her typical day: "get up eat breakfast brush teeth, watch T.V. Lunch, nap, help with making supper dishes shower watch T.V. Brush teeth wipe down the sink then go to bed." (*Id.* 170 (sic throughout)).  She again stated she could only lift ten pounds and needed frequent breaks from standing, although plaintiff did not check the box next to "sitting" in the section asking which areas of daily living her conditions impacted.  (*Id.* 175).

In her testimony before the ALJ, plaintiff said she can walk two-and-a-half blocks before needing a twenty- to thirty-minute break.  (*Id.* 33).  She can stand twenty to thirty minutes and can sit ten to fifteen minutes.  (*Id.*).  Plaintiff testified she does the dishes, cooks "some," and watches her and a friend's children.  (*Id.* 33-34).  In describing her back pain, plaintiff testified, "when I walk sometimes it feels like it shoots up the back, and down the leg, and across both hips.  When I sit down it shoots all over my back . . . It's a stabbing and throbbing like somebody is taking an ice pick and ramming it into my bones."  (*Id.* 35).  Plaintiff indicated standing in a hot shower, applying a heating pad, and taking medication relieved the pain.  (*Id.*).  Walking down stairs, bending and lifting, sitting for too long, and reaching for things made the pain worse.  (*Id.*).  She described a "good day" as being able to clean her bedroom.  (*Id.* 36).  On the worst of the "bad days," plaintiff indicated she is unable to move and that it hurts to sit and stand.  (*Id.*).  Plaintiff stated the number of good days compared to bad days is "about even."  (*Id.* 37).

### B. *Substantial Evidence Supports the ALJ's RFC Determination*

The ALJ determined plaintiff's residual functional capacity was that she was able to "perform light work as defined in 20 CFR 416.967(b) except she can only occasionally climb, balance, stoop, kneel, crouch, and crawl; she requires a sit/stand option; she can understand, remember, and carry-out detailed, non-complex job tasks; she can relate to others on a superficial

basis." (Tr. 14). In explaining this RFC, the ALJ stated he had given plaintiff "the benefit of all doubt as to her subjective complains." (*Id.* 17). After limiting plaintiff to a "restricted range of light work," the ALJ further explained, "I have provided postural limitations, as well as sitting and standing limitations, which are specific to [claimant's] symptoms, particularly her back pain. The medical evidence, when considered in the light most favorable to the claimant, does not warrant further limitations." (*Id.*).

> Light work is defined by the Social Security Administration as follows:
>
> involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); 20 C.F.R. § 416.967(b).

Plaintiff argues the ALJ's residual functional capacity (RFC) was not supported by substantial evidence of record. Weighing the *Wren* factors, however, the Court concludes there *was* substantial evidence supporting the ALJ's RFC determination.

The objective medical evidence indicates plaintiff suffers from a medically determinable condition in her lumbar spine which causes some degree of pain. The 2006 and 2009 CT scans along with the 2009 X-Ray indicate plaintiff suffers from degenerative disc disease of the lumbar spine. (Tr. 229, 250, 262). The question is whether plaintiff is capable of performing light-level work, along with the other restrictions listed by the ALJ, despite the pain and her medical problem. That question was answered affirmatively by Dr. Bird, who concluded plaintiff was capable of

performing activities consistent with light-level work.² (*Id.* 398-405). Dr. Bird made his determinations with specific reference to plaintiff's history of degenerative disc disease and to the X-ray verifying plaintiff suffers from the disease. (*Id.* 399-400). The "sit/stand option" included in the ALJ's RFC determination is not found in Dr. Bird's conclusions but rather appears to stem from Dr. Barias's statement that plaintiff's back pain "apparently impairs her being able to stand or sit for a long time." (*Id.* 374).

Plaintiff has pointed to no medical determination conflicting with Dr. Bird's or Dr. Barias's conclusions,³ and the Court has not independently found such evidence. There is no finding by any medical personnel indicating plaintiff is not capable of working due to her back problem. The range of motion tests do not reveal any limitations in plaintiff's movement. The only conflict in the record is between plaintiff's statements that she is unable to work due to the pain in her back and the doctors' determinations otherwise.

Pain can constitute a disabling impairment. *Falco v. Shalala*, 27 F.3d 160, 163 (5th Cir. 1994). However, pain is disabling only when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Selders v. Sullivan*, 914 F.2d 614, 618-19 (5th Cir. 1990). By itself, the fact that a plaintiff may suffer pain while working is not enough to support a finding of disability. *Hames*, 707 F.2d at 166. Rather, "[p]laintiff must show that [she] is so functionally impaired that [she] is precluded from engaging in substantial gainful activity." *Id.* (citations omitted). In

---

² Dr. Bird found plaintiff capable of occasionally lifting twenty pounds, frequently lifting ten pounds, and standing, walking, and/or sitting for about six hours in an eight-hour workday. (Tr. 399). He indicated plaintiff had certain postural limitations, i.e., he limited plaintiff's climbing, balancing, stooping, kneeling, crouching, and crawling to occasional. (*Id.* 400). He did not impose any additional limitations on plaintiff. (*Id.* 401-03).

³ Plaintiff complains of the ALJ's failure to recognize that the results of the 2009 CT scan indicated *severe* chronic degenerative disc disease. (*Id.* 250). It is true that in discussing the 2009 CT scan, the ALJ simply stated the exam revealed "chronic degenerative changes . . ." without noting the severity of those changes. (*Id.* 16). Such an oversight, however, is insufficient to provide a basis for overturning the determination. This is so especially when the ALJ's RFC determination was based upon the report of a state agency doctor reviewing that very report.

determining whether pain is disabling, "the law requires the ALJ to make affirmative findings regarding a claimant's subjective complaints." *Falco*, 27 F.3d at 163. The decision whether plaintiff's pain is disabling rests soundly within the discretion of the ALJ. *Hollis v. Bowen*, 837 F.2d 1378, 1387 (5th Cir. 1988).

After reviewing plaintiff's medical evidence, the ALJ found, "the claimant's subjective complaints of back pain are out of proportion to the objective medical evidence." (Tr. 17). While this finding is in conflict with the ALJ's statement that he gave all benefit of the doubt to plaintiff's subjective complaints, that determination was within the ALJ's discretion, *see Hollis*, 837 F.2d at 1387, and plaintiff has not shown the ALJ's determination was an abuse of discretion. *See id*. Plaintiff testified her back problems began subsequent to her 2006 car accident. (Tr. 29 (plaintiff testifying "I was in an automobile accident, and ever since then that's -- it's hard for me to walk. It's hard for me to sit for very long. I've got to keep constantly moving.")). She continued to work, however, after that accident. Despite having degenerative disc disease diagnosed as early as 2006, plaintiff continued working until 2009. Apart from a statement plaintiff made to a counselor indicating she had seen a chiropractor, the medical record indicates plaintiff did not seek additional medical help for her back pain from 2006 to 2009. After she fell in 2009, plaintiff did seek help for her back pain by going to the emergency room on three different occasions, the last of which was October 2009. The record, however, indicates plaintiff did not again seek medical treatment for her back pain from that day forward, at least as of the ALJ hearing in April 2011. Plaintiff has not actively and consistently sought medical treatment to the degree expected of a person suffering from "constant, unremitting" pain. *See Selders*, 914 F.2d at 618-19. Plaintiff did not show the pain was "wholly unresponsive to therapeutic treatment" as there is no indication plaintiff ever pursued an extended course of treatment. *See id.*; *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990) (the

fact that plaintiff did not routinely seek treatment for pain can be evidence discounting its disabling nature).

Moreover, it was within the discretion of the ALJ to accept the objective medical evidence and opinions of treating and examining physicians over plaintiff's subjective complaints. *See Laffoon*, 558 F.2d at 254. Because every portion of the RFC determination plaintiff challenges has evidentiary support in the form of objective medical tests and diagnoses and opinions of treating and examining physicians, the ALJ's enunciated reasons for denying plaintiff benefits despite her subjective complaints of pain and disability in her cervical spine/neck and knee indicate the ALJ did not abuse his discretion. To be substantial, the evidence need only be adequate to support the conclusion, it need not be by a preponderance. *See Wren*, 925 F.2d at 126; *Anderson*, 887 F.2d at 633.

*C. Substantial Evidence Supports the ALJ's Determination of Plaintiff's Ability to Find Work*

Plaintiff further contends the Commissioner erred in determining there are jobs in the national economy plaintiff is capable of performing. The ALJ concluded plaintiff is not capable of returning to her past relevant work as a fast-food worker and cook. (Tr. 18). He did find, however, plaintiff is capable of working as a folding machine feeder, mail room clerk, or a shipping and receiving weigher. (Tr. 19).

Pointing to the each of these jobs' descriptions as set forth in the *Dictionary of Occupational Titles* (*DOT*), plaintiff contends none of these jobs have the "sit/stand option" included in the ALJ's RFC assessment. Plaintiff's submits that even if the RFC determination is supported by substantial evidence, the ALJ's conclusion that the listed jobs fit plaintiff's RFC determination is erroneous.

Plaintiff is correct that the very definition of light work is work "requir[ing] a good deal of

walking or standing, or . . . involv[ing] sitting most of the time." 20 C.F.R. § 404.2567(b). The Social Security Administration has issued special comments on the topic of jobs at which a person can choose to either sit or stand at will:

> There are some jobs in the national economy -- typically professional and managerial ones -- in which a person can sit or stand with a degree of choice . . . However, most jobs have ongoing work processes which demand that a worker be in a certain place or posture for at least a certain length of time to accomplish a certain task. Unskilled types of jobs are particularly structured so that a person cannot ordinarily sit or stand at will. In cases of unusual limitation of ability to sit or stand, a [vocational specialist] should be consulted to clarify the implications for the occupational base.

Rules for Adjudicating Disability Claims in Which Vocational Factors Must Be Considered, 43 Fed. Reg. 55,349, Soc. Sec. Reg. 83-12 (Nov. 28, 1978).

> A job in [the "light work" category] requires a good deal of walking or standing . . . A job is also in this category when it involves sitting most of the time . . . Relatively few unskilled light jobs are performed in a seated position . . . Since frequent lifting or carrying requires being on one's feet up to two-thirds of a workday, the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday. Sitting may occur intermittently during the remaining time.

*Id.*, Soc. Sec. Reg. 83-10.

Based upon these statements, there appears to be validity in plaintiff's argument: the ALJ's RFC determination, which limited plaintiff to working jobs where she has the option to either sit or stand as necessary, seems inconsistent with his determination plaintiff is capable of performing the listed light, unskilled jobs. Plaintiff's argument becomes stronger when one reviews the jobs' definitions as set forth in the *DOT*.

It is at this point, however, when the vocational expert's (VE's) testimony is critical. At the hearing, the following transpired between the VE and ALJ:

> [ALJ] If you consider [Ms. Collins's] age, education, and work history, if she were at the light level, could complete detailed but not complex tasks, relate to other workers on a superficial basis, and then occasionally climb, balance, stoop, kneel,

>crouch, and crawl . . . Would there be other jobs?
>
>[VE]   Yes, sir.
>
>[ALJ]  Mr. Taylor, have you reviewed the documents provided to you concerning the claimant?
>
>[VE]   Yes, sir. I have.  A folding machine feeder light and unskilled . . . A mailroom clerk light and unskilled . . . and a shipping and receiving weigher, light and unskilled.
>
>[ALJ]  Does that allow any sit/stand option at all?
>
>[VE]   Yes, sir.  There could be a sit/stand.
>
>[ALJ]  Does it have that?
>
>[VE]   Yes, sir.

(Tr. 38-39).

>In his decision, the ALJ discussed plaintiff's unique RFC assessment:
>
>the claimant's ability to perform all or substantially all of the requirements of this [light] level of work has been impeded by additional limitations.  To determine the extent to which these limitations erode the unskilled light occupational base, I asked the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and residual functional capacity.  The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative occupations such as folding machine feeder . . . a mail room clerk . . . and a shipping and receiving weigher.

(*Id.* 19).

The ALJ recognized plaintiff suffers from additional limitations, and properly relied upon the services of a VE in evaluating plaintiff's RFC.  *See Fields v. Bowen*, 805 F.2d 1168, 1170-71 (5th Cir. 1986).  As the Fifth Circuit has stated, "[t]he value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed" in the performance of jobs.  *Id.* at 1170.  The Court gives the VE's

testimony a good deal of deference, recognizing not only that the VE is the expert in job requirements but also that its task is to evaluate whether the Commissioner's determination is supported by substantial evidence, not to reweigh the evidence or try the issues *de novo*. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999).

The VE in this case testified the jobs he determined a person like plaintiff could perform allowed for the worker to have a "sit/stand" option, i.e., to alternate sitting and standing.[4] The ALJ is not only able to rely on the testimony of a VE in matters of specific job requirements and options, but, when the RFC contains limitations beyond those set forth in the Code of Federal Regulations, the ALJ *must* rely on VE testimony. *Carey v. Apfel*, 230 F.3d 131, 145 (5th Cir. 2000). The ALJ therefore did not commit error by relying on the VE's testimony.

> Plaintiff points to the descriptions of the three jobs as found in the *DOT* and avers
>
> The jobs identified by the VE obviously have a great deal of work processes, and it would make sense that she might be able to sit during breaks or when work is caught up. Otherwise, the ability to sit or stand would depend on what portion of the job she would be doing at that particular time.

(Plaintiff's Brief in Support of Claim for Social Security Benefits, doc. 17, pg. 12 (filed Apr. 27, 2012)).

---

[4] The VE listed the three jobs. (Tr. 38). The ALJ followed up with the question, "[d]oes *that* allow any sit/stand option at all?" to which the VE responded, "[y]es, sir. There could be a sit/stand." (*Id.* 38-39 (emphasis added)). The ALJ continued, "[d]oes *it* have that?" to which the VE again responded, "[y]es, sir." (*Id.* 39 (emphasis added)). Thus, there is some degree of vagueness in the VE's testimony. It is not clear whether the ALJ's question of if "it" has a sit/stand option refers to only the last job listed by the VE or to all three of the jobs listed by the VE. Proper English dictates the use of "that" and "it" refers only to the last job listed by the VE as both of those pronouns are singular. If the ALJ were meaning to refer to all of the listed jobs, he would have used the pronouns "they" instead. The ALJ's questions, however, came during the course of ongoing questioning, and it is entirely possible the ALJ meant to refer to all three jobs and simply, in the heat of the moment, did not use the proper pronoun. It seems more likely this interpretation is accurate, as it would not make sense for the ALJ to limit his questioning about a RFC limitation as to only one of the jobs listed by the VE. Of course, the VE's straightforward responses do not provide any elucidation as to whether he understood the question to refer to only the last listed job or to all three jobs. In any event, this issue was not raised by either party. For the sake of thoroughness, the Court concludes the ALJ was referring to all of the jobs listed by the VE in his questioning and, likewise, that the VE's responses were directed to all of the listed jobs.

Here the sit/stand option was directly presented to the VE, and plaintiff was given the opportunity to present this argument during cross-examination of the VE. There was no discussion with the VE regarding the feasibility of being able to sit or stand at will in any of the listed jobs. As was the case in *Carey v. Apfel*, 230 F.3d at 145, plaintiff here contends the VE's testimony was either incorrect or at least deserving of additional development. No such challenge, however, was made at the administrative hearing when the vocational expert could have considered any possible error and either changed his answer or explained his analysis in support of it. This failure to address such an issue at the administrative level is critical per *Carey v. Apfel*, 230 F.3d at 146, 147.

Further, it is not clear there is an actual conflict. The VE is the witness responsible for knowing and applying the *DOT* and is the expert in job requirements. *See id.* (stating "the DOT job descriptions should not be given a role that is exclusive of more specific vocational expert testimony with respect to the effect of an individual claimant's limitations on his or her ability to perform a particular job"). Here, the *DOT's* explanations of each of the jobs at issue, i.e., of folding machine operator, mail clerk, and shipping and receiving weigher, are not in direct conflict with the VE's testimony. While it is true that those descriptions do not include a sit/stand option, none of the job descriptions specifically exclude such an option. Stated differently, there is nothing in the *DOT*'s job descriptions unequivocally establishing the VE's testimony was incorrect.

Consequently, any conflict between the VE's testimony and the *DOT*, and the form of conflict asserted by plaintiff in this case, comes only by implication or inference. For example, the *DOT*'s description of folding machine operator indicates the job entails tending to a machine that automatically folds shirts. *Dictionary of Occupational Titles*, 369.685.030 (4th ed. 1991). If one *assumes* this means that a person either must only stand before the machine the entire time or must only sit at the machine the entire time, then plaintiff's argument has substance. The *DOT's*

definition of a mail clerk is someone who "[s]orts incoming mail for distribution and dispatches outgoing mail." *Id.*, 209.687.026. Again, the argument that the option to sit or stand is not possible with this job must be based upon an assumption regarding the specifics of the job. The description itself does not exclude the possibility of either sitting or standing while sorting and dispatching the mail. The same analysis holds true for the *DOT*'s description of shipping and receiving weigher. *See id.* 222.387-074.

Giving plaintiff the benefit of the doubt and assuming *arguendo* that there is some degree of implied conflict between the VE's testimony and the *DOT*, the Court, following *Carey*, is unable to remand on such a conflict. The Fifth Circuit has expressly held, "[t]o the extent that there is any implied or indirect conflict between the vocational expert's testimony and the DOT in this case . . . the ALJ may rely upon the vocational expert's testimony provided that the record reflects an adequate basis for doing so." *Carey*, 230 F.3d at 146. There is nothing calling into question the expert status of the VE in this case. As discussed above, the RFC the ALJ presented to the VE was based upon substantial evidence. The ALJ's reliance on the VE's testimony was not in error, even if there was an implied conflict between the VE's testimony and the *DOT*. *See id.* The VE's unchallenged testimony that plaintiff would have an option to either sit or stand in the listed jobs is adequate, in the context of the record as a whole, to support the ALJ's determination that plaintiff could perform other available work. *See id.* at 146-47.

V.
RECOMMENDATION

For the reasons set forth above, it is the opinion and recommendation of the undersigned to the United States District Judge that the decision of the Commissioner finding plaintiff TONYA DEE COLLINS not disabled and not entitled to disability benefits be AFFIRMED.

VI.
INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this 4th day of March, 2013.


_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE


**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(E). **Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Report and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).